IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

RCVD – USDC COLA SC
FEB 28 '25 ᴀ12:15

| David D Wilson | Complaint for Employment Discrimination |

(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)

Case No. _____
(to be filled in by the Clerk's Office)

Jury Trial: ☑ Yes ☐ No
(check one)

-against-

Health Care, Partners of SC
Yvonne Davis HCPSC rep
George Williams HCPSC rep
Santina Mayo HCPSC rep

(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)

I would like a jury trial to every claim as this will provide an objective reasonable person unbiased views in the case. It will provide support for fairness and impartial viewpoints. It focuses on solutions that benefits everyone.

## I. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

Name    David Wilson
Street Address    271 Woodlander Drive
City and County    Blythewood,
State and Zip Code    SC 29016
Telephone Number    803. 397. 1752

**B.     The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title (if known).  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Yvonne Davis and HealthCare Partners of SC |
| Job or Title (if known) | President of the Board HCPSC |
| Street Address | 1608 N. Main Street |
| City and County | Conway, Horry County |
| State and Zip Code | SC, 29526 |
| Telephone Number | 843.248.4700 (843) 615-0568 |

Defendant No. 2

| | |
|---|---|
| Name | George Williams and Health Care Partners of SC |
| Job or Title (if known) | Board Member HCPSC |
| Street Address | 1608 N. Main Street |
| City and County | Conway Horry County |
| State and Zip Code | SC 29526 |
| Telephone Number | (843) 222-7331   843 248 4700 |

Defendant No. 3

| | |
|---|---|
| Name | Santina May and Health Care Partners of SC |
| Job or Title (if known) | CEO |
| Street Address | 1608 N. Main Street |
| City and County | Conway, SC Horry County |
| State and Zip Code | SC 29526 |
| Telephone Number | (845) 245-7116  (843) 248-4700 |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title (if known) | |

2

Street Address          _____

City and County        _____

State and Zip Code     _____

Telephone Number    _____

**C.    Place of Employment**

The address at which I sought employment or was employed by the defendant(s) is:

Name                *Health Care Partners of SC*

Street Address         *1009 N. Main Street*

City and County        *Conway, Horry County*

State and Zip Code     *SC 29526*

Telephone Number    _____

## II.    Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

  ☑     Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

         *(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

  ☐     Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

         *(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

  ☐     Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

         *(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

  ☐     Other     federal     law     *(specify     the     federal     law):*

3

| ☐ | Relevant | state | law | *(specify,* | *if* | *known)*: |

| ☐ | Relevant | city | or | county | law | *(specify,* | *if* | *known)*: |

### III.   Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.  *see A Hached*

A.   The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

☐ Failure to hire me.
☑ Termination of my employment.
☐ Failure to promote me.
☐ Failure to accommodate my disability.
☑ Unequal terms and conditions of my employment.
☑ Retaliation.
☑ Other acts *(specify)*: Hostile Work Environment

*(Note:  Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.   It is my best recollection that the alleged discriminatory acts occurred on date(s)

*Starting around July 7, 2024*

C.   I believe that defendant(s) *(check one)*:

☑ is/are still committing these acts against me.
☐ is/are not still committing these acts against me.

4

### III. Statement of Claim

### FIRST STATEMENT OF CLAIM
**(Yvonne Davis-Breach of Fiduciary Duty)**

1.   David Wilson, the Plaintiff, claims that on July 18, 2024, July 22, 2024, July 24-26, 2024, and July 30, 2024, while working as the Chief Administration Officer (CAO), Chief Operations Officer (COO) and HR Manager for Health Care Partners of SC (HCPSC), sent several emails, text messages and had phone conversations with the Defendant, Yvonne Davis, President of the Board for HCPSC. The conversations confirmed misconduct from Santina Mayo, CEO of HCPSC and potential discrimination and other state and federal violations as the EEOC granted the right to sue. July 24, 2024, Plaintiff spoke with Defendant for 38 minutes, 39 seconds.

2.   Plaintiff explained to the Defendant that he made several attempts including numerous emails to the CEO to provide clear and concise directions to perform these three duties as the CAO, COO and HR Manager. Plaintiff explained to Defendant that CEO never a replied to the emails.

3.   July 24, 2024, Plaintiff spoke with Defendant for 38 minutes, 39 seconds explaining how under a reasonable person standard that excluding from emails, training and on-boarding was an attempt for the Plaintiff to fail.

4.   Plaintiff informed the Defendant that he took measures of handling things at the lowest level by sending an email to the CEO, informing her of a possible discrimination within the company. However, when the CEO replied in an email denying any allegations of discrimination, the belittling behavior, and hostile work environment began; intentionally leaving Plaintiff off important emails, excluding him from meetings on the company calendar, excluded him from off-site training, and on-boarding training As a last result, the Plaintiff contacted Defendant of these things by text message. Defendant stated, "Well, not exactly what I wanted to hear, but I must be honest, I am not surprised. Thank you in advance, and looking forward to hearing from you." Plaintiff attempted to warn Defendant of the discriminating behavior and as a result of being the only African American on the leadership team who was treated this way, he felt and observed the hostility increase as a result of his race. The EEOC confirmed this was a Title VII race/discrimination concern.

5.   After several conversations between the Plaintiff and Defendant the Defendant said in a text message, "Good morning! Whoever you told, you reached out to me, told her this morning. I just got off with a meeting with her." That same day, the CEO called Plaintiff in the office along with the new HR Manager, Blair Osborne and had a 3 hour meeting that was meant to

outline how they were attempting to trap the defendant. The Plaintiff recorded the 3 hour meeting. The undermining and belittling treatment from the CEO was harsher. (Recording available upon request)

6.  The Plaintiff informed the Defendant of all misconduct and hostile work environment and discrimination that the CEO was creating and the Defendant has a fiduciary responsibility to investigate and address all at risk behaviors of the CEO when brought to her attention. The Plaintiff understands that an informal inquiry or investigation directed by the defendant could have eliminated the reprisal that was displayed upon him.

7.  Plaintiff allowed the CEO to mistreat, discriminate, retaliate and wrongfully terminate the Plaintiff on false charges. Not only did this cause intentional infliction of emotional distress (IIED) because the board sought Plaintiff's services. Plaintiff left his consulting job to help be a difference maker within the organization; but the Defendant refused to reprimand or place the CEO under investigation.

8.  Defendant breached their fiduciary duty by enabling the CEO to continue to harass, cause a hostile work environment, intentionally keep the Plaintiff from doing his job by withholding calendar events, attending on-boarding training that was essential for the success in the 3 roles that was expected of him to fulfill. As a result the CEO wrongfully terminated Plaintiff out of retaliation and proper cause. Plaintiff showed a pattern of these behaviors through text messages, emails and phone calls to the Defendant and other board members around July 6, 2024.

9.  August 13, 2024, two weeks after termination, the Defendant dispatched or allowed the local sheriff of Blythewood, SC, Richland County to go the house of the Plaintiff to ask if he was a threat to the employees of HCPSC and asked if the Plaintiff had guns simply because he is a retired veteran. The defamation of character and hostility continued even after termination to embarrass or cause shame with surrounding neighbors and his family and friends which is another attempt to cause intentional infliction of emotional distress (IIED).

## SECOND STATEMENT OF CLAIM
### (George Williams-Breach of Fiduciary Duty)

10. David Wilson, the Plaintiff, claims that on July 7, 2024,while working as the Chief Administration Officer (CAO), Chief Operations Officer (COO) and HR Manager for Health Care Partners of SC (HCPSC), sent a text message to the Defendant, George Williams, Board Representative for HCPSC. The Plaintiff requested the contact information for the president of the board, Yvonne Davis and the other board members to inform them all of the behavior that could be damaging to the organization. The Defendant sent the Plaintiff the contact information to the board president only.

11. July 11, 2024 Plaintiff asked the Defendant in a text message for the other board members contact information to inform them of ongoing discrimination, hostile work environment, belittling, undermining in the presence of subordinates, etc. Plaintiff spoke with Defendant for 59 minutes, 33 seconds.

12. July 18-19, 2024, Plaintiff text the Defendant about the same things that were not getting any better.

13. July 19, 2024, Defendant asked the Plaintiff to call him. Plaintiff spoke with defendant for an additional 35 minutes, 35 seconds. The Plaintiff explained to the Defendant that the CEO is conducting everyday business in a way that shows reckless regard for others and the Plaintiff never received the proper on-boarding training, probationary or 30 day evaluation, expectations for the 3 jobs expected to perform and attempted to have IT falsely plant documents on his computer to frame him and have him terminated under false and wrongful termination.

14. July 23, 2024, Plaintiff sent the Defendant a formal email detailing what he had discovered from the CEO and within the organization. Plaintiff also sent the email to the board president, Yvonne Davis. This email was to inform, act and prevent any type of disgruntled employee actions within the organization as a precautionary measure.

15. July 24, 2024, Plaintiff spoke with the Defendant for 13 minutes, 51 seconds explaining the same things as the retaliation, hostile work environment, belittling in front of subordinates was getting worse by the day. Plaintiff explained that the harsh treatment, belittling, undermining in front of subordinates was not changing for the better. The Defendant said, "If we fire the CEO, who will run the organization." The Plaintiff replied, "There is no person above doing the right thing. No matter who it is, if we are gone, someone else will replace us. That's no excuse to allow these state and federal violations to continue." The Defendant enable the CEO to mistreat, discriminate, retaliate and wrongfully terminate Plaintiff on false charges. Not only did this cause the Plaintiff intentional infliction of emotional distress (IIED) because the Defendant personally called the Plaintiff in Sept, 2023 seeking his services. The Defendant said, "David, we need your help!" So the Plaintiff left his consulting job to help be a difference maker within the organization to help turn things around.

16. Defendant breached their fiduciary duty by enabling the CEO to continue to harass, cause a hostile work environment, intentionally keep the Plaintiff from doing his job by withholding calendar events, attending on-boarding training that was essential for the success in the 3 roles that he was expected to fulfill. As a result the CEO wrongfully terminated Plaintiff out of retaliation and proper cause. The Plaintiff attempted to warn the Defendant of the discriminating behavior and as a result of being the only African American on the leadership team who was treated this way, he felt and observed the hostility increase as a result of his race.

17. August 13, 2024, two weeks after termination, the Defendant dispatched or allowed the local sheriff of Blythewood, SC, Richland County to go the Plaintiffs' house and asked if he was a threat to the employees of HCPSC and asked if the Plaintiff had guns simply because he is a retired veteran. The defamation of character and hostility continued even after termination to embarrass or cause shame with surrounding neighbors and his family and friends which is another attempt to cause intentional infliction of emotional distress (IIED).

### THIRD STATEMENT OF CLAIM
**(Santina Mayo-Promissory Estoppel, Discrimination, IIED)**

18. David Wilson, the Plaintiff, claims that on July 6, 2024 and several more dates, while working as the Chief Administration Officer (CAO), Chief Operations Officer (COO) and HR Manager for Health Care Partners of SC (HCPSC), sent emails to the Defendant, Santina Mayo, CEO for HCPSC asking her to explain in detail what's expected of him in the roles of CAO, COO and HR Manager. The Defendant never responded to the Plaintiffs email requests; which was pivotal in the Plaintiffs success. However, the Defendant mentioned shortcomings in front of the Plaintiffs subordinates and through email but never attempted to inform the Plaintiff how to improve in the 3 roles.

19. Plaintiff also asked the Defendant several times to allow him the opportunity to attend on-boarding training to be better essential for the company and the 3 roles. The Defendant never responded to the emails.

20. July 17, 2024, Plaintiff sent Defendant an email of a possible discrimination within the organization. The Defendant immediately sent an email denying there was discrimination. From this point, the Defendant began to exclude the Plaintiff from emails and calendar training events, off site training and belittle him in front of his subordinates.

21. Plaintiff sent a text message to Defendant for support in the roles of CAO,COO and HR Manager. Defendant denied the request to support by not responding to the text or emails.

22. Plaintiff had meetings, emails and text messages requesting the Defendant to issue a probationary evaluation, 30 day performance evaluation and expectations for the 3 duties. Defendant did not reply to emails.

23. Plaintiff never received the support from the CEO, so he contacted the board president, Yvonne Davis and board member, George Williams. After the Defendant discovered that the Plaintiff reported her to the board, the Defendant began to belittle Plaintiff in the presence of his subordinates, intentionally excluded Plaintiff from training in Atlanta, and meetings and emails which caused a hostile work environment. Two days after Defendant found

out that Plaintiff reported her to the board of directors and the EEOC, the Plaintiff was wrongfully terminated.

24. Plaintiff was sought after by members of the board and the Defendant in September 2023. The Defendant hired Plaintiff as a consultant 2 times before requesting that he apply for the position of Chief Administrative Officer.

25. Defendant caused intentional infliction of emotional distress to the Plaintiff. The Plaintiff was a consultant and left his everyday consulting job by request of the Defendant and board members to be a positive difference maker within the organization. Defendant hired Plaintiff for 2 consecutive consulting jobs prior to the CAO position, seeking Plaintiff for insight and guidance on HR and other organization issues on a daily basis for several months.

26. July 10, 2024, Defendant hired Plaintiff to perform duties as CAO but when Plaintiff began the job he was denied several attempts to attend on-boarding which is essential for performing key requirements of the job which is associated with promissory estoppels. The job title and description was CAO. Although the Plaintiff was assigned 2 additional job titles and responsibilities and getting paid for only one, had he known that he would not be allowed to receive proper guidance, a probational and performance evaluations, he would have never accepted the job. This also caused a hostile work environment because of the lack of guidance and direction even after several email, text message, and verbal attempts requesting it. Again, the Defendant hired Plaintiff for 2 consecutive consulting jobs prior to the CAO position, which shows a level of trust and competence to be a productive member of the team. Once hired, it all changed for the worse.

27. Plaintiff attempted to support and defended the CEO, and established accountability from within the staff and other employees. The Plaintiff sent the Defendant a text informing her that he would support and defend her of any disrespect from subordinates in the company. Defendant specifically pointed out in a text message that the CFO was blatantly disrespectful to her on a daily basis. However, when it was convenient, the Defendant said the Plaintiff was disrespectful and included it on the termination letter.

28. July 31, 2024, the day the Plaintiff was terminated, the Defendant sent a message throughout administration and the company to, "lock your office doors because you never know what the Plaintiff will do because he is a veteran." This defamation of character has not only caused a negative outlook on the Plaintiff but the reputation of all veterans.

29. August 13, 2024, two weeks after termination, the Defendant dispatched the local sheriff of Blythewood, SC, Richland County to go the house of the Plaintiff to ask if he was a threat to the employees of HCPSC and asked if the Plaintiff had guns simply because he is

a retired veteran. The Sheriff told the Plaintiff that was the reason they came to his house. The hostility continued even after termination to embarrass or cause shame with surrounding neighbors and his family and friends which is another attempt to cause intentional infliction of emotional distress (IIED).

## III. Statement of Claim

### E. The Facts of my case are as follows

30. In the case of Plaintiff, David Wilson v. Defendants, Health Care Partners of SC and representatives Yvonne Davis, George Williams and Santina Mayo. Plaintiff was a self employed consultant contacted by Defendant Williams in September 2023. Defendant Williams informed Plaintiff that the company needed help. Defendant Williams informed Defendant Mayo to give Plaintiff a call to see what he could do to help.

31. Defendant Mayo contacted the Plaintiff in October 2023. Plaintiff advised Defendant Mayo on several HR and organization issues to include how to securely send high dollar payments through the US Mail. After 2 paid consecutive consulting jobs with HCPSC, Defendant Mayo asked the Plaintiff to apply for the CAO position.

32. June 10, 2024, Plaintiff was hired as the CAO and when attending the on boarding training, he was immediately removed from the training and was denied the opportunity to ever return to the training after several email and text message requesting the training.

33. After being hired to fulfill the duty description and responsibilities of the CAO he was then without any guidance expected to perform 2 additional duty descriptions and requirements of COO and HR Manager which was not a part of the job the Plaintiff interviewed for or hired to do.

34. Defendant Mayo immediately pointed out shortcomings, so the Plaintiff asked Defendant Mayo to provide clear and concise expectations to perform the 3 roles but Defendant Mayo never replied to the emails.

35. Plaintiff asked Defendant Mayo in an email and text messages to perform his probationary, 30 day performance and it was denied and Defendant Mayo never responded.

36. Defendant Mayo on several occasions undermined, and belittled the Plaintiff in the presence of his subordinates. The Defendant also intentionally excluded the Plaintiff from emails, meetings, and training events.

37. Plaintiff attempted to resolve the matter at the lowest level by informing the board of

directors the retaliation and hostile work environment for not only himself but the other employees as well.

38. The board of directors acknowledged that they were aware of the state, federal, ethical and moral violations but made the decision not to do anything about the racism, discrimination, hostile work environment, retaliation and wrongful termination.

39. After Defendant Mayo discovered that the Plaintiff had reported her to the board of directors, Defendant Mayo had a 3 hour meeting with the Plaintiff that was recorded. Defendant Mayo informed Plaintiff that she was aware that he reported her to the board of directors.

40. Two days later, July 31, 2024, Defendant Mayo and the new HR Manager, Blair Osborne came to the Plaintiffs office and wrongfully out of retaliation, terminated him.

## V. Relief

### Punitive

41. Defendant's conduct was malicious, oppressive, and in grossly reckless disregard of the Plaintiff's rights; as such incorporates by reference the allegations of paragraph #1-41.

42. Defendant's breached their fiduciary responsibilities of duty of loyalty, duty of care, duty of good faith and duty to act in the best interest of the company and Plaintiff after receiving notice from Plaintiff.

43. Defendants defamatory false statements about Plaintiff's military service to the company's administrative staff and the local sheriff department caused emotional distress, including anxiety as to how it affected his reputation. Plaintiff coped by refusing to do activities and staying inside.

44. The Defendants caused intentional infliction of emotional distress excluding the Plaintiff from on boarding, belittling and undermining in the presence of subordinates which caused a hostile work environment.

45. Plaintiff was wrongfully terminated which was a result of retaliation for reporting to the board of directors and EEOC.

WHEREFORE, Plaintiff pray for the following relief:

1.  An award of punitive damages in an amount of $3,000,000.00 (3 million dollars) to be shown according to proof;

2.  Any other relief that the court deems the Plaintiff is entitled to.

D.  Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

☑ race _____

☐ color_____

☐ gender/sex _____

☐ religion _____

☐ national origin _____

☐ age.  My year of birth is _____.  *(Give your year of birth only if you are asserting a claim of age discrimination.)*

☐ disability or perceived disability *(specify disability)*

_____

E.  The facts of my case are as follows.  Attach additional pages if needed.

_____ See Attached _____

_____

_____

_____

_____

_____

*(Note:  As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV.  Exhaustion of Federal Administrative Remedies

A.  It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

_____ July 26, 2024 _____

B.  The Equal Employment Opportunity Commission *(check one)*:

☐ has not issued a Notice of Right to Sue letter.

☑ issued a Notice of Right to Sue letter, which I received on *(date)*

_____ Dec 17, 2024 _____.

5



# HEALTH CARE PARTNERS
### of South Carolina, Inc.

May 31, 2024

David Wilson
271 Woodlander Drive
Blythewood, SC 29016

David_wilson31310@yahoo.com

Dear Mr. Wilson

I am incredibly pleased to extend an offer of employment to you as the Chief Administrative Officer at Health Care Partners of SC, Inc. (HCPSC). This position reports to the Chief Executive Officer (CEO). Your annual salary will be **$150,000** subject to the productivity standards noted below with a beginning date of **Monday, June 10, 2024**. Your probationary period shall be three months (90 days). Your primary office location will be Conway; however, you will be responsible for the operations of Singleton Ridge, Brittons Neck, Marion and Johnsonville offices.

Your employment is subject to our adherence to HCPSC's personnel policies and procedures, which include an acknowledgement that your employment is "at will" as defined by state law, your achievement and maintenance of your continuing education credits, acceptance of the Health Practitioner's Data Bank Report, HCPSC medical staff protocols, your professional references, your maintenance of your South Carolina State License, your adherence to the laws and regulations of the Bureau of Primary Care, Health Resources and Services Administration the state of South Carolina.

In addition, you acknowledge and agree to comply with all HIPAA rules and regulations, and you agree not to remove any patient information from the practice at any time. Your scope of practice shall include a minimum of 40 hours of outpatient clinical time and/administrative time per week, including evenings and Saturday hours, and attending meetings on behalf of the organization, as determined by administration.

As a member of the professional staff, you are entitled to the following benefits:

- 20 days of vacation per year, accrued at the rate of 6.15 hours per pay period, but not available for use until probationary period is completed unless approved by the CEO.
- Ten paid holidays per calendar year.
- Seven (7) days per year sick leave, accruing at rate of 2.15 hours per pay period, to a maximum reserve of 30 days, with no pay out upon separation of service.
- Health insurance including medical insurance 82% employer paid, 18% employee paid (family coverage at group rates is available at employee's expense). 80% of the family coverage is paid by the employer.
- Dental and Vison-employee paid.

- Term Life-employer paid.
- Short Term and Long-Term Disability plans are currently offered at the employee's expense.
- 403b Retirement offered with employer match of 4%.
- Pay up to $75 for renewing licensure.

David, we are extremely excited about you joining our team!

If you need assistance, please do not hesitate to call me on (843) 248-4700 ext. 6356.

Sincerely,

Tynisha Melvin-Lewis
Chief Human Resources Officer

I, **David Wilson,** do hereby accept the position and provisions noted above as the Chief Administrative Officer at Health Care Partners of South Carolina, Inc.

_____
Signature

May 31, 2024
_____
Date

# TERMINATION OF EMPLOYMENT NOTICE

July 31, 2024

**Employee Name:** <u>David Wilson</u>

**Position:** <u>Chief Administrative Officer</u>

**SITUATION & ACTION:**

Your employment with Health Care Partners of South Carolina, Inc. ("Health Care Partners") is terminated effective immediately. Health Care Partners hired you for the position of Chief Administrative Officer ("CAO") on June 10, 2024. You have been employed for less than eight-weeks with Health Care Partners. During the short time you have worked for Health Care Partners, you have engaged in conduct that violates Policy 701 Employee Conduct and Work Rules. In Health Care Partners' judgment, your conduct amounts to:

- Insubordination or other disrespectful conduct;
- Poor work performance; and
- Engaging in such other practices or conduct that may be inconsistent with the ordinary, reasonable, common sense rules of conduct necessary to the best interests and welfare of the Company and its employees.

Below, Health Care Partners has described the conduct you have engaged in that gives rise to Health Care Partners' decision to terminate your employment.

## 1.    <u>Instructing Staff That They Cannot Raise Issues to HR or to the CEO</u>

You have instructed staff that they cannot bypass you, and they cannot go to Human Resources or to the CEO with any issues. By making this statement, you have created an atmosphere of fear and intimidation among our employees that is inconsistent with the best interests and welfare of Health Care Partners and its employees and is inconsistent with Health Care Partners' Policies.

Health Care Partners' HR Manager, Ms. Blair Osborne, heard you make this statement during a staff meeting on Monday, July 29, 2024. You repeated this statement multiple times during this meeting, and each time you looked directly at Ms. Osborne in an intimidating manner. Employees who were present at the staff meeting complained about you making this statement during the staff meeting.

Health Care Partners' Policy 105 requires employees to immediately report discrimination or harassment, and it gives employees the option of either reporting such matters to their direct supervisor or to the CEO. Also, Health Care Partners Policy 708 allows employees to submit grievances directly to the CEO.

54877394 v1

The instructions you provided to staff are contrary to Policy, and it has created a negative atmosphere for our employees.

## 2.     Insubordination and Disrespectful Conduct

During a meeting on Wednesday, July 23, 2024, the CEO of Health Care Partners conducted a meeting that you attended with other employees. During this meeting, the CEO raised concerns about your failure to complete the onboarding process for newly hired employees in a timely fashion. In particular, the CEO expressed concern about clinical staff not having all of their credentialing and privileging documents timely submitted to the Health Services Committee. Newly hired clinical staff cannot treat patients if they are not properly credentialed and privileged, and this costs Health Care Partners' money and it deprives our patients of timely receiving needed medical care.

When the CEO raised these issues to you, you became angry. You interrupted the CEO and walked-out of the meeting and went to your office. The CEO then went to your office, and when she arrived, she closed the door, so she could privately discuss with you your disrespectful and insubordinate behavior in walking out of the meeting. When the CEO did so, you said in an intimidating fashion, "Are you sure you want be in this room with the door closed." You then stood up from behind your desk and walked towards the CEO, saying, "I don't like you questioning me." The CEO felt uncomfortable based on the comments you made.

On Friday, July 26, 2024, Ms. Blair Osborne (Human Resources Manager) reported that you were stomping your feet and were acting angry in front of others. Other employees complained about your conduct. During the meeting on July 29, 2024 (discussed below), you stated that you were angry at the CEO because of your belief that the CEO did not timely respond to an email that you sent. Later that same day, Ms. Osborne met with you and passed along an instruction from the CEO, who was not in the office that day, that you should not go forward with scheduled Lunch n' Learns. You ignored this direction and went forward with the Lunch n' Learns anyway, telling Ms. Osborne that "will not happen" and that you "will continue with your original plan."

On Monday, July 29, 2024, the CEO scheduled a meeting with you. Ms. Blair Osborne attended the meeting as a witness. During this meeting, you raised your voice and you were disrespectful. You interrupted the CEO when she was talking, and you spoke in an extremely disrespectful manner to Ms. Osborne. The CEO had to interject because of the disrespectful manner in which you spoke to Ms. Osborne.

You were insubordinate and disrespectful to the CEO both during the meeting on July 23 and when the CEO met with you in your office on the same day. You were also insubordinate and disrespectful on July 26 and July 29. In addition, you displayed poor work performance in failing to properly and timely onboard employees.

## 3.     Introducing Policies Without Approval

Finally, you created company policies and sent them to employees without approval from the CEO and by the Board of Directors. Health Care Partners issues policies as an organization, and before

Health Care Partners issues policies, it makes sure they are approved by the CEO and the Board of Directors. The policies you introduced did not go through this approval process. By attempting to implement policies on your own, you engaged in conduct that was inconsistent with common sense rules of conduct and that was not in the best interests of Health Care Partners. In addition, the policies you introduced were poor in the judgment of Health Care Partners and inconsistent with the manner in which to conducts its business.

## 4.    Conclusion

For these reasons, Health Care Partners has decided to terminate your employment, effective immediately. You must return all property to Health Care Partners.

Respectfully,

Santina Mayo

### Employee Acknowledgment

By signing below, I, David Wilson, acknowledge that Santina Mayo reviewed the Termination of Employment Notice with me in a face-to-face meeting on the date of this Termination of Employment Notice listed above. The witness who signed below was also present for this face-to-face meeting.

_____          _____
**David Wilson**                                          **Witness**

**Mail body: Fw: Text Messages Between Plaintiff and Defendant**

Text Messages

Yahoo Mail: Search, Organize, Conquer

----- Forwarded Message -----
**From:** "david wilson <david_wilson31310@yahoo.com>
**To:** "David Wilson" <david_wilson31310@yahoo.com>
**Sent:** Fri, Feb 28, 2025 at 8:54 AM
**Subject:** Text Messages Between Plaintiff and Defendant
Text Messages between Plaintiff, David Wilson and Defendant, Santina Mayo, CEO

This series of text messages show, the Plaintiffs support for the Defendant. It shows the disrespect that the CFO has towards the Defendant for years but the Plaintiff is terminated for it alleged disrespect. It also shows the 3 job titles that the Plaintiff was doing and the Defendant said the Plaintiff was doing a good job.

Jun 28, 2024 at 6:38 PM EST

Defendant, CEO:
David, I know you're upset about the four hours. I will let the four negative hours go this time.

Plaintiff, David:
No Mrs. Mayo, I'm not sure what your end goal is by taking the time back. You'll take away my power base and yours.

Everyone knows, so you can't give them back. Bob and Theresa already know. If you want this system to work, we can't do that. You implemented an HR thing that I'm currently over HR.

You have to trust me enough to have tough conversations and be steady.

You should've talked with me. I don't want you to do something that doesn't sit well with you. Don't change it. Actually we should've talked.

Defendant, CEO:
I actually don't care about the hours because it is the right thing to do. I just knew something didn't feel right early yesterday morning.

Plaintiff, David:
It's ok. My point was that for the past 3 weeks, I get there way early to try and stay ahead of HR stuff, CAO stuff, and learning on the go the COO stuff. Then I work through lunch and stay 2 to 3 hours afterward. I do it all in the name of loyalty and commitment.

I'm getting a handle on my team. You might not see it, but I am.

You are my work wife, and I'm your work husband. I don't mean that in a derogatory way. (You have to trust me is all I'm saying.) I will never expect favoritism, never.

You obviously felt that something needed to happen. But you should've voice your opinion because you trust me.

Sorry for the long text.

Defendant, CEO:
I can promise you nothing has changed. Bob called over looking for you to spend time with Theresa. It was not meant in any other way. I have done this before. It wasn't meant in a way to make you feel like I don't trust you. I trust you 100% (I know you have been coming in early and staying late.) I am sorry if you felt that way. That was certainly not my intention at all. I wasn't going to announce to everyone you were in court for 4 hours. I was just going to say you would be in later.

Plaintiff, David:
That's what I'm saying, too.

I'm gonna get Bob. He's gonna be my first one, but I want to make sure I remain professional. He's gonna get it, though. The way he undermines you in front of others is so disrespectful.

I'm good. I don't have a problem. I just didn't appreciate how it went down is all.

I'm ok and will be ok.


Defendant, CEO:
I am letting go of the 4 hours. It is not worth to me. Bob will accept what I do and that's it. He is waiting for me to do something different with you. That's what started this whole 4 hours. (He is very disrespectful and I have had it.) And Dr. Moya! You should have heard her today in my office. I tried talking to her about Sabrina. She went on and on that she doesn't want her and that when the last DON left me and Tynisha had a nerve to ask her why she left. I am over not being able to do my job because nothing can be said. This is ridiculous! Bob a ring like he did yesterday at the meeting. What the heck! I apologize about how it went down, you can either accept my apology and I will handle the hours or I don't know what to do.I don't mean to bother you on your time.

Plaintiff, David:
I apologize Mrs Mayo, don't remove the hours. We're not gonna do anything to give them something to talk about .

It's ok. I'm good.

See, Bob's anger and energy are displaced. He should be acting and correcting Mel, but he is scared.

The next time he acts out, I'm gonna professionally check him where he stands in front of everyone he displays that but professionally.

He doesn't want me to succeed, and I'm not sure why, but I got him in front of anyone he does that around, book it.


Defendant, CEO:
[You are doing great, and I do notice.]  The board told me I may need to replace my entire team. Are you and me good?

Plaintiff, David:
Yes Mrs. Mayo, I've been good. I was just a little disappointed that you couldn't talk to me.

I don't want favoritism because I'm gonna do all I can not to put you in a compromising situation.


These text messages were exchanged between Plaintiff and Defendant and available.


David

Yahoo Mail: Search. Organize. Conquer



# Health Care Partners
## Of South Carolina, Inc.

## Chief Administrative Officer (CAO)
## Job Description

### Full-Time Position

**Job Description**

**Job Title:** Chief Administrative Officer (CAO)

**Job Type:** Permanent

**Reports To:** Chief Executive Officer (CEO)

**Status:** Exempt

**Job Overview:** Under the direct supervision of the Chief Executive Officer, the CAO is a top-level executive in a company, whose primary responsibilities include managing the day-to-day operations. They oversee specific departments such as finance, HR, and sales reporting directly to the CEO and the board of directors.

# ESSENTIAL DUTIES AND RESPONSIBILITIES:

* Provide input in business and strategic planning
* Set goals for departments and individual managers
* Collaborate with colleagues to implement policies and develop improvements
* Organize and coordinate inter- and intradepartmental operations
* Oversee resource allocation and budgeting
* Provide guidance to subordinate staff and evaluate performance
* Resolve issues that may arise in a timely manner
* Assume responsibility for timely reporting to senior management or regulatory agencies
* Assist in other tasks (e.g. fundraising) as assigned

# Skills/Requirements

* Proven experience as an administrative officer
* Experience in operations management
* Solid understanding of business functions (HR, finance etc.)
* Knowledge of fiscal planning, budgeting, and reporting
* Knowledge of relevant laws and regulations (e.g. SEC)
* Proficient in MS Office and databases
* Outstanding communication and interpersonal skills
* Ability in decision-making and problem-solving



Mail body: Text message with Yvonne Davis acknowledging claims



9:29 📱 ＊ ⚋ ·                                    Ⓝ ⚈ 📶 92%📶

✕  1                                    ⧉      🗑      ☆      ⋮

Thursday, Jul 18 · 1:51 PM

Good Afternoon David!

Well, not exactly what I wanted to hear, but I must be honest, I am not surprised. Thank you in advance, and looking forward to hearing from you.

Yvonne

1:51 PM

I know it, Ms. Davis, but I felt you and the other board members' passion, and I can't sit on this. It's really toxic, and they could only hide it for so long.

I'll have it to you by Monday.

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.    Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐     60 days or more have elapsed.

☐     less than 60 days have elapsed.

## V.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

*See Attached*

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

6

**A.**   **For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: ~~Feb 28~~ , 20 25 .

Signature of Plaintiff        _____

Printed Name of Plaintiff    David D. Wilson _____

**B.**   **For Attorneys**

Date of signing: _____ , 20__ .

Signature of Attorney        _____

Printed Name of Attorney    _____

Bar Number                  _____

Name of Law Firm            _____

Address                     _____

Telephone Number            _____

E-mail Address              _____

7